UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

| | | |
|---|---|---|
| ROBERT S. WHITAKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-1088 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| THOMAS S. EVELAND, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| ROBERT S. WHITAKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-1090 |
| | ) | |
| v. | ) | |
| | ) | |
| ALLEN SCHLOSSBERG, | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

These consolidated cases are civil rights actions brought by a *pro se* plaintiff against

judicial officers involved in adjudicating a state circuit court child-custody matter.  Plaintiff, Robert

S. Whitaker, is a party to an Eaton County Circuit Court domestic relations case.  He brings case no.

1:12-cv-1088 against Thomas S. Eveland, a now retired judge of the Eaton County Circuit Court.

Plaintiff brings case no. 1:12-cv-1090 against Allen Schlossberg, who is the Eaton County Friend

of the Court and serves as Attorney Referee for that court's Family Division.  The subject matter of

these cases involves the handling of certain post-judgment proceedings in the Eaton County Circuit

Court concerning child custody.  Plaintiff brings his claims under 42 U.S.C. § 1983, and the court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1343.  In essence, plaintiff alleges that procedural errors by defendants, and especially their delay in adjudicating post-judgment proceedings regarding child custody, deprived plaintiff of due process of law and of his right to access to the courts.  Plaintiff seeks an award of damages for the time he was separated from his son as an alleged result of defendants' violation of his rights.

After the close of the discovery period established by the case management order, defendants moved for summary judgment, supporting their motion with the affidavit of defendant Schlossberg and copies of numerous documents relating to the state-court domestic relations case. Plaintiff opposes the motion.  The parties have consented to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (*See* Order of Reference, docket # 11).

On October 17, 2013, the court conducted a hearing on defendants' motion.  At the hearing, plaintiff clarified certain aspects of his claim.  First, plaintiff confirmed that he is seeking only an award of damages, and not injunctive relief.  Second, he confirmed that he is not asking this court to interfere in any way with the Eaton County Circuit Court proceedings.  Finally, he stated that he is proceeding against the defendants in their individual capacities only and that he does not seek relief from Eaton County, the State of Michigan, or the Michigan court system.  These concessions by plaintiff on the record moot several of the defenses raised in defendants' motion, including abstention under *Younger v. Harris*, 401 U.S. 37 (1971), Eleventh Amendment immunity, and questions concerning municipal liability.

The crux of this case therefore comes down to a single question:  should plaintiff be allowed to proceed to a jury trial for damages against Judge Eveland and Friend of the Court

Schlossberg on plaintiff's claims arising from acts and omissions of the defendants in their handling of the Eaton County domestic relations case? The answer to that question is clearly "no," as both defendants are entitled to absolute judicial immunity. As the immunity defense is dispositive of all plaintiff's claims in both cases, the court need not reach the other defenses asserted by defendants. A summary judgment will be entered on behalf of the defendant in each of the captioned cases.

### Findings of Fact

The only facts necessary for resolution of this case involve the proceedings in *Lori A. Whitaker v. Robert S. Whitaker*, case no. 01-302-DM, a divorce proceeding in the Eaton County Circuit Court. Those facts are established by the affidavit of defendant Allen Schlossberg, the attached certified records from the divorce case, and records provided by plaintiff.[1] Although each party has delved deeply into the post-judgment proceedings in that case, only a general sense of the proceedings is necessary for resolution of the judicial immunity defense.

The divorce case was commenced with the filing of a complaint on March 6, 2001. The matter was assigned to defendant Thomas S. Eveland, a Michigan circuit judge assigned to the Family Division. Both plaintiff and his wife were represented by counsel. Judge Eveland entered a judgment of divorce on January 29, 2002. The judgment of divorce (ID#s 573-86) provided that the parties would share physical custody of the two minor children until the children attain the age of eighteen. The judgment also contained a provision allocating parenting time between the parties and required each party to make certain contributions concerning the support of the children.

---

[1] For purposes of convenience, all electronic page citations to the record are in case no. 1:12-cv-1088.

-3-

The court file shows no significant activity until seven years later, when former Mrs. Whitaker filed a *pro se* motion asking to be relieved from her child support obligation because of changed circumstances. (ID#s 670-71). Judge Eveland referred the matter to defendant Schlossberg, in his role as Family Court Referee. (Order, ID# 165). After a report was issued by Friend of the Court, on February 3, 2003, Judge Eveland entered a consent order modifying the parties' support obligations. (Order, ID#s 173-74).

On September 25, 2009, the parties' son was the victim of a tragic accident, which set in motion the long chain of events giving rise to the present lawsuit. Mr. Whitaker's eleven-year-old son was accidentally shot in the head while he and a friend were playing with a loaded handgun at Mr. Whitaker's residence. Mr. Whitaker was allegedly not at home, leaving the boys unsupervised. This event led plaintiff's former wife to file a motion seeking a change in the custody status of both children. The motion (ID#s 175-76) sought to change joint legal custody to full legal and physical custody solely with the mother. On the day the motion was filed, Judge Eveland entered an *ex parte* order referring the matter to the Friend of the Court for an investigation and recommendation. The order did not change the status quo, except to require that Mr. Whitaker "not have any guns in his home, surrounding areas, or his vehicles when the children are in his care." (Order, ID# 177). Thereafter, the Friend of the Court hearing was adjourned several times at the request of the attorneys. (ID#s 187-88).

The Eaton County Probate Court, which had concurrent jurisdiction over the minor children, began its own proceeding. That court received a report from Child Protective Services and conducted a hearing on November 12, 2009, at which it was ordered that plaintiff's former wife

would have sole physical custody of the minor children, with plaintiff granted supervised parenting time. (*See* Investigative Report, ID#s 183-84).

On February 18, 2010, the parties to the divorce case stipulated to the entry of an order that continued joint legal custody and supervised visitation, in addition to addressing other issues. (ID#s 189-91). Thereafter, the referee hearing was adjourned three times. (ID#s 192-94).

On July 13, 2010, a referee's hearing was conducted. Both parties appeared with their respective counsel, and Referee Schlossberg took evidence. On August 31, 2010, he served a 17-page proposed order on the parties. (ID#s 196-212). Plaintiff's attorney filed objections to the proposed order on September 15, 2010. (ID# 213). Judge Eveland conducted a status conference concerning the objections on October 21, 2010. (ID# 214).

On the next day, October 22, 2010, the attorneys signed a proposed consent order which provided for the continued joint legal custody of the children, but granted to the former Mrs. Whitaker "sole physical custody." (ID# 215). The order contemplated that plaintiff would continue to have supervised parenting time with both children, on both a supervised and unsupervised basis. (ID# 216). Judge Eveland signed the order on October 22, 2010, but added manuscript provisions limiting the duration of the order to November 15, 2010. The order provided that the matter of child support and parenting time (but not custody) would be reviewed by Friend of the Court Investigator James Hoyt on November 15, 2010. The October 22, 2010 order specifically left all previous orders undisturbed, unless they were specifically modified by that order. (*Id.*).

Investigator Hoyt met with the parties and presented them with a three-page proposed order. (ID#s 218-20). The proposed order addressed a number of child support issues, as well as the question of custody and parenting time. Plaintiff stated his desire to return to unsupervised visits,

while his former wife was still concerned about the children's safety.  The proposed order allowed unsupervised visitation in plaintiff's home only under certain circumstances.  The recommended order, however, said nothing about custody.  Counsel for both parties filed objections.  (ID#s 221-23).

Judge Eveland scheduled a referee's hearing on the objections for February 4, 2011. (ID# 224).  The matter was adjourned to February 25, 2011.  (ID# 225).  On the day scheduled for hearing the objections, plaintiff's attorney filed a motion asking the court to reinstate custody of his younger son to his "primary physical custody and care," with joint legal custody of the children to continue.  (Motion, ID# 226-28).  Defendant Judge Eveland entered an order on February 28, 2011, referring the matter back to the Friend of the Court for an evaluation of all issues, including custody, parenting time, and child support.  (ID# 229).  Shortly thereafter, Mr. Whitaker's counsel filed a motion for psychological evaluation of the parties and of one of the minor children.  (Motion dated 3/30/2011, ID#s 230-33).  His ex-wife contested the need for psychological evaluation.  (ID#s 234-35).

Thereafter, the defendants in these cases took the following action.

- Judge Eveland approved a stipulation adjourning a hearing on the motion for psychiatric evaluation.  (ID#s 245-46).

- Judge Eveland scheduled a referee's hearing for July 29, 2011, on all pending issues.  (ID# 249).

- On October 18, 2011, Judge Eveland set a review hearing before the referee for November 18, 2011.  (ID# 250).

- Judge Eveland signed an order approving a stipulation of the parties to adjourn the review hearing.  (ID#s 251-52).

- On February 13, 2012, Judge Eveland signed an order approving a stipulation allowing Mr. Whitaker's counsel to withdraw and providing that Mr. Whitaker would represent himself *in pro per*.  (ID# 254).

- On May 31, 2012, Judge Eveland conducted a hearing on Mr. Whitaker's *pro se* motion for change of venue.  (Transcript of Proceedings of 5/31/2012, ID#s 260-68).  In arguing the motion, Mr. Whitaker complained about the length of time that the proceedings were taking.  Judge Eveland denied the motion but promised to monitor the matter with the Friend of the Court to make sure that it was "expeditiously addressed."  (ID# 268).

- On October 16, 2012, Referee Schlossberg issued a 66-page Referee's Order making proposed findings and suggesting resolutions to all open matters.  (ID#s 272-337).  Mr. Whitaker filed lengthy objections.  (ID#s 338-87).

- The court scheduled a hearing for December 3, 2012, on Mr. Whitaker's objections to the Referee's Order.

Plaintiff filed his complaint in this court against Judge Eveland on October 4, 2012, followed by his lawsuit against Friend of the Court Schlossberg on October 12, 2012.  In December 2012, the cases were consolidated for pretrial purposes.  As a result of plaintiff's lawsuit, Judge Eveland recused himself from the post-judgment proceedings in the divorce case.  (Order of Disqualification, ID# 389).  The matter was assigned to a different circuit judge, who held a hearing on Mr. Whitaker's objections and ultimately affirmed the Referee's Order.

Plaintiff's *pro se* complaints in these consolidated cases are brought pursuant to 42 U.S.C. § 1983 and seek to redress alleged violations of plaintiff's constitutional rights. With regard to Judge Eveland, plaintiff alleges that defendant denied him due process by refusing to allow "any substantive action that would result in adjudication." (Compl., ID# 2). Plaintiff also asserts infringement of his First Amendment right to petition for redress of grievances, "as the Defendant continues to deny Plaintiff access to the Court to plead his case." As evidence, plaintiff cites the circuit court's "blatant disregard" for the case flow management guidelines, which set time limits for the adjudication of domestic relations issues. The complaint against Friend of the Court Schlossberg makes similar allegations.

## Applicable Standard

Both plaintiffs have filed hybrid motions for "judgment on the pleadings and/or summary judgment." These motions rely on matters outside the pleadings and therefore are properly considered to be motions for summary judgment. The standards governing the resolution of motions for summary judgment in the federal courts are well established.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  The court must draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

       A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1).  FED. R. CIV. P. 56(c)(1).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  FED. R. CIV. P. 56(e)(2), (3); *see El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 427 (6th Cir. 2013).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Dominguez v. Corr. Med. Servs.*, 555  F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013).

## Discussion

### A.    Judge Eveland

       Plaintiff seeks to recover from Judge Eveland for acts and omissions allegedly committed by the Judge in the course of handling numerous post-judgment proceedings in plaintiff's divorce case.  The state-court record shows that Judge Eveland entered orders, approved stipulations,

scheduled hearings, adjourned hearings, referred matters to the Referee, and decided motions. The crux of plaintiff's allegations against the Judge concerns alleged delays in deciding custody issues and the Judge's penchant for referring matters to the Referee rather than allowing *de novo* hearings before the court itself. This court's review of the state-court record indicates that plaintiff is mistaken in many of his conclusions concerning the import of Judge Eveland's acts and decisions in the divorce case. For present purposes, however, this court will assume the essential truth of plaintiff's allegations: Judge Eveland delayed unduly in deciding certain matters and referred motions for a Referee hearing rather than deciding them himself in the first instance. These allegations, accepted as factually true only for purposes of the motion for summary judgment, are insufficient to overcome Judge Eveland's absolute judicial immunity.

State judges enjoy absolute immunity from federal damage suits for acts performed in their judicial capacities, except for acts done in the clear absence of jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012). Claims that the state court judge violated state law, acted "maliciously or corruptly" or in excess of his jurisdiction are insufficient to overcome judicial immunity. *See Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001).

> "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). This immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. *See Pierson v. Ray*, 386 U.S. 547, 554-55, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court explained: "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.... Most judicial

-10-

mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 226-27, 108 S. Ct. 538, 98 L.Ed.2d 555 (1988).

*Stern v. Mascio*, 262 F.3d at 606.

The Supreme Court has held that absolute judicial immunity is overcome "in only two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). First, a judge is not immune for non-judicial actions, *i.e.*, actions not taken in a judicial capacity. *Id.* Second, a judge is not immune for actions, although judicial in nature, done in complete absence of all jurisdiction. *Id.* In determining whether certain conduct is judicial in nature, the court must adopt a functional approach, asking whether the act is one normally performed by a judge. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see Savoie v. Martin,* 673 F.3d 488, 493 (6th Cir. 2012).

In the present case, all the actions of Judge Eveland alleged in the complaint or reflected in the record are clearly judicial in nature, as they occurred in adjudicating post-judgment divorce proceedings. Deciding motions, granting adjournments, modifying parental rights, referring matters to a referee, and hearing objections are all "paradigmatic judicial acts," because they involve resolution of the dispute before the court and alter the rights and liabilities of the parties. *See Forrester*, 484 U.S. at 227. A judge is immune from liability arising from such judicial actions, even if the decisions were erroneous or malicious. *See Morales*, 502 U.S. at 11. Nor can it be said that Judge Eveland took any of these acts "in complete absence of all jurisdiction." The Michigan circuit court is a court of general jurisdiction. MICH. COMP. LAWS § 600.151. The circuit court has "original jurisdiction in all matters not prohibited by law." MICH. CONST. 1963, art. 6 § 13. The Revised Judicature Act grants to the Family Division of the circuit court "sole and exclusive

-11-

jurisdiction over . . . cases of divorce and ancillary matters . . ." in cases commenced on or after January 1, 1998.  MICH. COMP. LAWS § 600.1021(1)(a).  Generally, once the Family Division of the circuit court exercises jurisdiction over a child and issues an order under the Child Custody Act, "the court's jurisdiction continues until the child is 18 years old."  MICH. COMP. LAWS § 722.27(1)(c); *see Bert v. Bert*, 397 N.W.2d 270, 272 (Mich. Ct. App. 1986).

Judge Eveland is clearly entitled to judicial immunity from a damage action arising from his judicial acts in a circuit court divorce case.  Neither of the exceptions identified by the Supreme Court -- non-judicial acts or acts done in clear excess of jurisdiction -- apply to this case. Plaintiff, however, argues that the law recognizes a third exception, arising from inordinate delay in deciding judicial matters.  Plaintiff cites no authority in support of his suggested exception, and none exists.  Defendants properly rely on the Sixth Circuit's decision in *Mann v. Conlin*, 22 F.3d 100 (6th Cir. 1994), as dispositive of this contention.  *Mann* involved a lawsuit against a Michigan circuit judge for his conduct in domestic relation cases.  Plaintiffs in that case alleged, among other asserted wrongdoing, that the defendant judge refused to grant them a *de novo* hearing in violation of law and delayed in holding hearings long after the state court rule deadline.  22 F.3d at 102.  The Court of Appeals held that all of the defendant judge's conduct was subject to the bar of absolute judicial immunity.  This is consistent with the universal rule in the federal courts of this country:  a judge does not forfeit immunity by reason of delay in judicial proceedings.  *See, e.g., Kulesa v. Rex*, 519 F. App'x 743, 745-46 (3d Cir. 2013) (state judges and judicial employees immune from damage action by litigant alleging that judge used her judicial position "to stall divorce proceedings"); *Lowe v. Letsinger*, 772 F.2d 308, 312 (7th Cir. 1985) (state judge's four-year delay in ruling on motion for post-conviction relief was a "judicial act" entitled to absolute immunity); *Sibley v. Macaluso*, No.

13-319, ___ F. Supp. 2d ____, 2013 WL 3835812, at * 5 (D.D.C. July 26, 2013) (claims that appellate judges refused to address plaintiff's case in a timely manner in violation of his right to petition and access courts barred by judicial immunity). "Deciding when to issue a decision is part and parcel of a judge's docket management function over which he has broad and virtually unfettered discretion. . . . For these reasons, we think that deciding when to decide a case, no less than deciding the case itself, is a judicial act for which a judge is absolutely immune." *Lowe*, 772 F.2d at 312.

### B. Friend of the Court Schlossberg

Defendant Schlossberg is also entitled to the protection of absolute judicial immunity, but only for acts that are quasi-judicial in nature. In the Michigan system, the Friend of the Court performs many administrative functions, to which judicial immunity does not attach. *See* Michigan Friend of the Court Act, MICH. COMP. LAWS §§ 552.501-.535. However, one of the statutory functions is to act as referee pursuant to Mich. Comp. Laws § 552.507. A referee is empowered to hear all motions in domestic relations matters (except spousal support motions) specified in Mich. Comp. Laws § 552.507(2)(a), conduct evidentiary hearings and file a statement of findings and a recommended order. The Rules of Evidence apply, and the parties are entitled to notice and other procedural safeguards. MICH. CT. R. 3.215(D). On objection by any party, the court is required to conduct a *de novo* review of the referee's proposed findings. MICH. COMP. LAWS § 552.507(4).

The Sixth Circuit and the district courts in this state have held that state-court referees are entitled to absolute judicial immunity when acting in such a quasi-judicial capacity. *See Johnson v. Granholm*, 662 F.2d 449 (6th Cir. 1981) (Michigan Friend of the Court entitled to absolute judicial immunity for quasi-judicial acts); *see also Johnson v. Turner*, 125 F.3d 324, 333-34 (6th Cir. 1997)

-13-

(juvenile court referees entitled to judicial immunity for quasi-judicial acts); *Victor v. Dosson*, No. 11-cv-13103, 2011 WL 6370999, at * 3 (E.D. Mich. Sept. 21, 2011) (Friend of Court referees enjoy absolute immunity from suit for judicial or quasi-judicial functions); *McGhan v. Kalkaska County Dep't of Human Servs.*, No. 1:08-cv-1113, 2009 WL 2170151, at * 12 (W.D. Mich. 2009) (state-court referee entitled to judicial immunity when acting in an adjudicative capacity); *O'Donnell v. Brown*, 335 F. Supp. 2d 787, 826-27 (W.D. Mich. 2004) (referee entitled to absolute immunity related to decisions made regarding the removal of children, a quasi-judicial function).

All of the actions, or failures to act, ascribed to defendant Schlossberg fall within the scope of judicial immunity. The record shows that he at all times acted pursuant to specific orders of reference from the circuit judge. He held hearings, conducted conferences, and served proposed orders. These acts were all quasi-judicial in nature and fell squarely within the jurisdiction conferred by Michigan statute and court rule. Plaintiff's assertion of an exception to immunity arising from the failure to act in a timely fashion is unsupported in law.

## Conclusion

Litigants involved in child-custody disputes are often dissatisfied both with the pace of the proceedings and with the ultimate outcome. This is understandable, as child-custody cases involve parents' relationship with their children. Divorce and child-custody matters are entrusted to the exclusive care of the state courts in our constitutional system. The state-court appellate process, and the power of the appellate courts to exercise superintending control over the trial court, provide more than adequate remedies for litigants who believe that trial judges are not fulfilling their duties in child-custody matters. Resort to federal-court damage actions against state judges and

-14-

hearing referees is plainly not open to disappointed state-court litigants.  Such lawsuits are ill-advised and serve only to impede the orderly delivery of justice in the state system.  This is precisely why the Supreme Court has recognized the doctrine of absolute judicial immunity.

Both defendants are entitled to the protection of judicial immunity, as all of the actions complained of are judicial in nature and within defendants' jurisdiction.  A summary judgment in favor of defendants will be entered in these consolidated cases.


Dated:  October 23, 2013                    /s/  Joseph G. Scoville
                                            United States Magistrate Judge